UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 14-13024-JGD |
| MICHAEL THOMPSON, MARK R. SMITH | ) | |
| and DALE BISSONNETTE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS'
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

March 31, 2017

DEIN, U.S.M.J.

### I. INTRODUCTION

The *pro se* plaintiff, John Evans, is serving a life sentence for first degree murder and

possession of a firearm without a license.  See Commonwealth v. Evans, 439 Mass. 184, 786

N.E.2d 375 (2003).  He has brought an action pursuant to 42 U.S.C. § 1983 against three

Department of Correction ("DOC") personnel,[1] alleging that his constitutional rights were

violated in connection with an allegedly false disciplinary report.  This matter is before the court

on the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  (Docket No. 75).

In connection with his opposition to the motion to dismiss, Evans filed a Motion to Supplement

---

[1] Michael Thompson was the Prison Superintendent of MCI-Concord, where Evans was confined at the relevant time.  Dale Bissonnette was the Deputy Superintendent of Classification at MCI-Concord, and Mark R. Smith was the Correction Officer Sergeant of the Inner Perimeter Security at MCI-Concord who wrote the disciplinary report at issue in this case.  Compl. (Docket No. 85-1) ¶¶ 2-4.

the Second Amended Complaint.  (Docket No. 85).  Since the "supplement" does not add any legal theories or facts not otherwise addressed by the parties, this court allowed the motion to supplement.  Therefore, the motion to dismiss shall be deemed to be directed to the Second Amended Complaint as "supplemented."

For the reasons detailed herein, this court finds that the Second Amended Complaint, as supplemented (Docket No. 85-1) (hereinafter "Compl."), fails to state a claim upon which relief may be granted.  Therefore, the motion to dismiss (Docket No. 75) is ALLOWED.

## II.  STATEMENT OF FACTS

### Scope of the Record

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Where, as here, the plaintiff is proceeding *pro se*, the court must construe his allegations liberally.  See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976) (a *pro se* complaint, however inartfully pleaded, must be liberally construed).  Of significance in the instant case, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'"  Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  In the instant case, the plaintiff has attached documents as exhibits to his original Complaint (Docket No. 1), his first Amended

Complaint (Docket Nos. 23, 29), and his affidavit in opposition to the motion to dismiss the Second Amended Complaint (Docket Nos. 84, 86).  The defendants have filed exhibits in support of a motion to dismiss for lack of jurisdiction (Docket No. 44), and in support of their motion to dismiss the Second Amended Complaint (Docket No. 76) ("Def. Ex.").  For the most part, these exhibits relate to the disciplinary charge at issue in this case, and reflect the record below.  The court will consider those exhibits that fall within the "narrow exception" recognized by the case law cited above.  This court has not converted the motion to dismiss into one for summary judgment.

Finally, this court recognizes that the defendants' statement of facts included in their memorandum in support of the motion to dismiss (Docket No. 76) ("DF") cites to portions of the Second Amended Complaint prior to its supplementation.  Since the same facts are included in the supplemented Second Amended Complaint, albeit under different numbered paragraphs, this court will cite to the defendants' statement of facts where appropriate.  Citations to the complaint ("Compl."), however, are to the Second Amended Complaint as supplemented (Docket No. 85-1).

Applying these principles and clarifications with regard to the record, the relevant facts are as follows.

### The Disciplinary Report

On December 11, 2013, Evans received mail that MCI-Concord's Inner Perimeter Security ("IPS") team seized for being a controlled substance.  Compl. ¶ 6.  A field test conducted on the mail indicated a positive result for K2/Spice Synthetic Marijuana.  Id. ¶ 7.  On December 12, 2013, Evans was transferred to the Special Management Unit ("SMU")

[3]

(segregation) at MCI-Concord on "awaiting action" status.  Id. ¶ 8.  While there, he received

notices on December 19, 2013, January 9, 2014, February 12, 2014 and April 11, 2014.  See

Evans Aff. (Docket No. 84) ¶ 9 & Exs. E2-E5.  These notices explained that he was being held in

the SMU "pending investigation with IPS" and "awaiting a hearing for violation of institution

rules or regulations."  Id.; DF ¶ 5.[2]

Meanwhile, on December 26, 2013, IPS submitted the seized mail to the Massachusetts

State Police Crime Lab for analysis.  Compl. ¶ 11.  The laboratory analysis results were returned

on February 26, 2014, indicating that the papers had been saturated with the synthetic canna-

binoid AB-FUBINACA (commonly referred to as K2), a synthetic form of marijuana.  Compl. Ex.

C.  The Certificate of Drug Analysis from the State Police stated that AB-FUBINACA was "not a

controlled substance."  Id.  It is undisputed that AB-FUBINACA was not classified as a controlled

substance until January 10, 2014, about a month after Evans' K2 soaked papers had been

seized.  See Compl. Ex. B, ¶ 8E.  However almost two years earlier, on or about March 27, 2012,

the DOC's Central Inmate Disciplinary Unit had published a memorandum stating that there had

been "an increase in the number of inmates introducing, attempting to introduce, or possessing

synthetic marijuana (also commonly referred to as K2, Spice, Serenity, herbal smoke, etc.)," and

that "inmates found introducing, possessing, or using these substances may be charged" with

unauthorized use, possession, or the attempt to use or possess "illegal" or "unauthorized"

drugs.  See Evans Aff. Ex. A.  Evans claims to have had no knowledge of this memorandum.  Id.

---

[2]  After Evans' Disciplinary Hearing, the details of which are described below, Evans continued to be
detained in the SMU, and he continued to receive notices accurately describing his status and the
reason for his continued confinement there.  See Evans Aff. Ex. E.

¶¶ 2-4.  It is unclear from the record before this court if and how this memorandum was disseminated.

On February 27, 2014, Sgt. Mark Smith issued Disciplinary Report No. 302729 to Evans. Compl. Ex. A.  Therein, Evans was charged with introduction, distribution or transfer of any narcotic, controlled substance, illegal drug, unauthorized drug or drug paraphernalia (Offense 1-15); attempting to commit any of the listed offenses (Offense 1-19); unauthorized use or possession of drugs, narcotics, illegal drugs, unauthorized drugs or drug paraphernalia (Offense 2-11); conduct which interferes with the security or orderly running of the institution (Offense 2-24); attempting to commit any of the listed offenses (Offense 2-29); and violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program (Offense 4-11).  See 103 CMR 430.24 (Code of Offenses).  According to the Disciplinary Report, "[i]Investigative findings established that inmate Evans conspired with civilian Kristin Spadafora to introduce the contraband into the correctional facility through the United States Postal Service."  Compl. Ex. A.  Evans claims that the Disciplinary Report was false because Sgt. Smith knew that K2 was not a controlled substance.

**Hearing on Confinement in the SMU**

On March 12, 2014, Evans had a hearing to address his continued confinement in the SMU pending a full hearing on the disciplinary charges.  Compl. Ex. E; DF ¶ 9.  See LaChance v. Comm'r of Corr., 463 Mass. 767, 776-77, 978 N.E.2d 1199, 1206-07 (2012) (inmates held in SMU entitled to notice, a hearing within 90 days, and a written decision).  Evans then filed Grievance 72660 on April 14, 2014, alleging that he had been held in the SMU without a disciplinary hearing since December 12, 2013, which was more than 90 days.  Compl. ¶ 17; DF ¶ 10.  The

grievance was denied on April 17, 2014 by the Institutional Grievance Coordinator.  DF ¶ 11.

Evans appealed this decision to MCI-Concord Supt. Michael Thompson, who ultimately denied it

on August 15, 2014.  DF ¶ 11.  In the interim, Evans had commenced the instant action on or

about July 16, 2014.  Docket No. 1.  All told, Evans remained in the SMU for approximately 7

months.

### Hearing on the Disciplinary Report

Evans had an evidentiary hearing on his Disciplinary Report on April 30, 2014.  DF ¶ 12;

Compl. Ex. B.  It was conducted by Sgt. Jonathan Toloczko, an Institutional Hearing Officer

("IHO").  Id.  Apparently, the hearing had been rescheduled at the request of Evans' counsel,

who appeared and argued that Evans could not be found guilty on the disciplinary charges

because the K2 was not contraband.  See Compl. Ex. B at ¶ 8A; DF ¶ 10.  In addition to

argument from Evans' counsel, the reporting officer, Sgt. Smith, testified.  DF ¶ 13.  During his

testimony, Sgt. Smith stated, in part, that the laboratory report had come back positive for

synthetic cannabinoids, and that "[t]he substance was found not to be a controlled substance

from the State Police."  Id.  He further testified that "the substance cannot be called a

controlled substance due to the date it was tested."  See Compl. Ex. B at ¶ 8B.  Finally, his

testimony was described as follows:

> He states it is overwhelming[ly] apparent just by the nature of what was sent and the
> investigation findings that she [Kristin Spadafora] intended to send a substance into the
> facility for [Evans] to use himself or for other Inmates to use.  He states they monitored
> phone calls that used code words that corroborated the evidence that was found that
> Evans was attempting to introduce the substance into the facility.  He states they went
> to the store where she had purchased the money order from and they had her on video
> purchasing the money order that was mentioned in the phone call.  He states they were
> using code during the conversations by saying 'we have the[] shoes, what type of
> shoes'? the substance was found on the papers with the pictures of the shoes on it.

Id.

IHO Toloczko found Evans guilty of violating Offense 1-19 (attempt) via Offense 1-15 (introduction, distribution or transfer of any narcotic, controlled substance, illegal drug, unauthorized drug or drug paraphernalia).  Id. ¶ 8E.[3]  In his written decision, he described the evidence that had been introduced at the hearing, and the evidence upon which he relied to support his findings.  Id.  IHO Toloczko recognized that while AB-FUBINACA was not placed on the controlled substance list until January 10, 2014, after the documents at issue in this case were seized, the substance was still considered an "illegal substance for the department of correction."  Id.  In fact, Offense 1-15 prohibits inmate possession of an "unauthorized drug" — there is no requirement that it be a controlled substance or illegal drug.  See 103 CMR 430.24 (Code of Offenses); see also DF ¶ 15 (Evans' request to dismiss the Disciplinary Report denied in June 2014 because Offense 1-15 prohibits inmate possession of unauthorized drugs).  Evans does not contend that K2 was an authorized drug.

Evans received a 120-day loss of telephone privileges and a restitution sanction of $432.00 on Offense 1-19 (attempt).  DF ¶ 16.  No sanction was imposed for Offense 1-15, and the remaining charges were dismissed.  Id.  On May 12, 2014 and June 12, 2014, Evans received additional SMU notices informing him that he would remain in the SMU pending classification, as his "discipline results [were] on appeal."  DF ¶ 17; Evans Aff. Exs. E6-E7.  Evans formally appealed the guilty finding on his disciplinary charges on May 28, 2014 and June 10, 2014.  Compl. ¶ 20.  The record reflects that he had another hearing about his continued confinement

---

[3]  The IHO appropriately used a "preponderance of the evidence" standard.  See 103 CMR § 430.16(1); Beryl v. Superintendent, Souza-Baranowski Correctional Ctr., 55 Mass. App. Ct. 906, 907, 772 N.E.2d 595, 596 (2002).

in the SMU on June 18, 2014, at which time it was recommended that he remain in the SMU

pending the results of his appeal.  Compl. Ex. E-1.  Superintendent Thompson denied the

plaintiff's appeal on June 20, 2014.  Compl. ¶ 21.  Evans alleges that he then "filed a complaint

with the Superintendent's office for defendant Mark R. Smith knowingly filing a false report and

false disciplinary report causing Plaintiff injury of being placed in the Segregation unit (smu)

causing Plaintiff loss of liberty, mental suffering and deprivation."  Id. ¶ 22.  No further details

regarding that complaint are alleged.  However, the record shows that on June 17, 2014, his

prior complaint about an allegedly falsified report was rejected by the Director of the Central

Inmate Disciplinary Unit, who wrote that Evans was improperly ignoring the fact that "charge 1-

15 also pertains to unauthorized drugs.  Given that the laboratory analysis results indicated the

presence of AB-FUBIACA [sic] (commonly referred to as K2), you were clearly in violation of that

offense via 1-19."  Compl. Ex. D-1.

### Litigation

Evans commenced the instant action on July 16, 2014.  On August 24, 2014, he

commenced an action in the nature of certiorari in Suffolk Superior Court, pursuant to Mass.

Gen. Laws ch. 249, § 4, appealing the Superintendent's decision.  DF ¶ 19; Def. Ex. 1.[4]  On cross-

motions for judgment on the pleadings, the Superior Court ruled in favor of the defendant and

dismissed Evans' complaint.  Def. Ex. 1 at 1.  As the court ruled in relevant part:

> The court cannot say that the Superintendent's decision was arbitrary
> and capricious in this case.  The evidence of an attempt to introduce K-2
> easily meets the substantial evidence test.  Evans' primary arguments stress
> two legal points.

---

[4] On certiorari appeal, the court reviews the record for "substantial evidence" in support of the hearing officer's decision.  Santiago v. Russo, 77 Mass. App. Ct. 612, 613-14, 933 N.E.2d 164, 167 (2010).

First, Evans argues that he cannot be charged with any offense regarding a controlled substance, because K-2 was not a controlled substance at the time. The court agrees that K-2 was not designated as a controlled Class I substance until after the offense. However, the governing regulation also prohibits drugs that are not controlled substances as long as they are "illegal" or "unauthorized." The Department's March 2012 policy plainly establishes that K-2 is "unauthorized", whether or not it is also illegal.

Second, Evans argues that he cannot be found guilty of an "attempt," because he was found not guilty of the underlying offense (1-15). His premise is incorrect. Unlike the class 2 and 4 offenses, which were "dismissed," the overall finding of "guilty" resulted in no sanctions for offense 1-15, but that does not mean that the hearing officer found him not guilty. On the contrary, the hearing officer clearly found that Evans had communicated with the sender of the letter about including the K-2 in the mail. Had the hearing officer rejected offense 1-15, he would have dismissed it. In any event, there is no reason why Evans cannot be found guilty of an attempt or making plans, even if the substance did not find its way past IPS.

Id. at 5-6.

Evans appealed to the Massachusetts Appeals Court. In a decision dated February 17, 2017, the Appeals Court affirmed the lower court's dismissal of Evans' appeal. Evans v. Thompson, No. 16-P-319, 91 Mass. App. Ct. 1106, 2017 WL 657649 (Feb. 17, 2017) (table). The Appeals Court rejected Evans' argument "that the determination that he violated the prison regulations in question is erroneous because at the time of his violation the particular form of synthetic marijuana known as AB-FUBINACA had not yet been listed by the Federal Drug Administration as a controlled substance." 2017 WL 657649, at * 1. Rather, the Court concluded, the Commissioner of Correction has "broad authority to adopt regulations and policies designed to maintain prison discipline[,]" including "the authority to regulate and prohibit the possession, use and attempt to possess or use, within the correctional system, substances that may not be prohibited under Federal or State criminal or civil law." Id. at *2.

[9]

The Court also rejected Evans' due process argument, finding that the DOC had "complied with the essential requirements of due process by giving the plaintiff advance written notice of the [disciplinary] charges, an opportunity to call witnesses and to present evidence, and a written decision by the factfinder of the evidence and the reasons for the action taken."  Id.  The Court rejected Evans' contention that "he was denied notice of the charges against him because the body of the disciplinary report states that he 'attempt[ed] to introduce a controlled substance,' but instead, he was found guilty of attempting to introduce an unauthorized drug, which he claims is a separate offense."  Id.  As the Court found, 103 CMR § 430.24, Offense 1-15 prohibits the introduction of any narcotic, controlled substance, illegal or unauthorized drug, and "[t]he plaintiff has not cited, and we are unaware of, any authority to support his contention that a due process violation occurs simply because the substance he was charged with attempting to possess was referred to as 'controlled' instead of 'unauthorized' in the body of the disciplinary report, when the actual offense he was charged with is clearly printed at the top of the report."  Id.[5]

### The Instant Complaint

In his supplemented Second Amended Complaint, Evans contends that as a result of having been placed in the SMU he "was unable to keep in regular contact with his dying wife[,]" and he "became depressed, agitated, confused at times slept fitfully when he could sleep and had thoughts of suicide."  Compl. ¶¶ 24-25.  He also alleges that he was unable to visit his dying

---

[5] The first offense listed in the Disciplinary Report is 1-15 pertaining to "[i]ntroduction, distribution or transfer of any narcotic, controlled substance, illegal drug, unauthorized drug or drug paraphernalia," and the second is 1-19 pertaining to "[a]ttempting to commit any of the above offenses ...."  Compl. Ex. A.

wife, even though it was her dying wish to see him.  Id. ¶¶ 29-30.  Moreover, Evans contends

that he "was retaliated [against] with the deprivation of [an] adequate amount of food each

day as a punishment while in the (smu) Segregation unit" and that he "suffered sever[e] loss of

weight while in the (smu) Segregation unit for 7 months in the amount of 48 pounds."  Id. ¶¶

26-27.  After 7 months in the SMU, plaintiff was transferred from MCI-Concord to the Souza-

Baranowski Correctional Center.  Id. ¶ 28; see Pl. Mem. (Docket No. 83) at ¶ 3 (Evans released

from SMU on July 15, 2014).

Count I of the supplemented Second Amended Complaint is entitled "Eighth Amend-

ment."  Therein, Evans contends that Superintendent Thompson violated his constitutional

rights as a result of the alleged lack of sufficient food in the SMU.  Id. ¶¶ 32-36.  He also claims

that his constitutional rights were violated as follows:

> A.   Those under the Eighth and Fourteenth Amendment by ignoring Policy,
>      Regulations, Directive, State Law, and prior Court Ruling.

> B.   By failing to issue notice of Rule, Regulations, Directive, for unautho-
>      rize[d] substance, by not publishing notice in prominent location
>      throughout the institution.

> C.   By punishing Plaintiff by keeping him in the (smu) segregation unit for 7
>      months and failing to ensure his subordinates complie [sic] with Court
>      Ruling that [n]o prisoner can be kept in the (smu) segregation unit for
>      more than 90 days and not protecting his Due Process.

Id. ¶ 37.  Similarly, in Count III, Evans alleges that Thompson violated his Fourteenth

Amendment rights by keeping him in the SMU for more than 90 days "without Due Process."

Id. ¶¶ 41-42.

Count II of the supplemented Second Amended Complaint is directed to Dale

Bissonnette, the Deputy Superintendent of Classification at MCI-Concord.  Therein, Evans

contends that Bissonnette is liable for a violation of his Eighth Amendment rights by keeping him in the SMU for more than 90 days.  Id. ¶ 39.  In Count IV, Evans contends that Bissonnette deprived him of due process by the same actions. Id. ¶ 43.

Count V of the supplemented Second Amended Complaint is directed to IPS Officer Mark Smith.  Therein, Evans contends that his constitutional rights and state law rights were violated by the Officer's conduct in writing a false disciplinary report and false investigation reports.  Id. ¶¶ 45-47.  Finally, in Count VI , entitled "Emotional Distress," Evans alleges that "as a result of the defendants['] neglect or purposeful, wantonly, maliciously or reckless infliction of emotional distress, Plaintiff has sustained permanent and serious personal injuries including but not limited to pain, suffering and emotional damage." Id. ¶ 49.  Evans is seeking compensatory and punitive damages from each of the defendants "individually and jointly and severally for the violation of Plaintiff's Civil Rights."  Id. at Prayer for Relief ¶¶ A-C.

Additional facts will be provided below where necessary to the court's analysis.

### III.  ANALYSIS

### A.    Standard of Review – Motion to Dismiss for Failure to State a Claim

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane." Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted). This second step requires the reviewing court to "draw on its judicial experience and common sense." Id. (quoting Ashcroft v. Iqbal, 56 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

Applying these principles to the instant case compels the conclusion that the motion to dismiss be allowed.

**B.     Challenges to the Sufficiency of the Food in the SMU**

Evans has claimed that his constitutional rights were violated due to lack of "proper and sufficient food" as well as a lack of "daily nutritional meals" for inmates in the SMU. Compl. 32-35. All such claims must be dismissed for failure to exhaust his administrative remedies. Evans did not file any grievance challenging the amount or appropriateness of the food in the SMU, which is a prerequisite to bringing this claim in court.

Pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  It cannot be disputed that Evans' challenge to the food in prison is an action "with respect to prison conditions" under § 1997e(a).  See Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life . . . .").  Nor does it matter that Evans was transferred from MCI-Concord, where the harm allegedly occurred.  See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002) (the fact that the plaintiff "happened to be a prisoner in various locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit.").  "To properly exhaust administrative remedies, a prisoner must complete the prison grievance procedures."  Johnson v. Thyng, 369 F. App'x 144, 147 (1st Cir. 2010) (citing Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922-23, 166 L. Ed. 2d 798 (2007)).  Evans did not file a grievance relating to the food in the SMU, as a result of which his claims must be dismissed "[s]ince Congress clearly made the exhaustion of administrative remedies a necessary antecedent to filing a claim in federal court[.]"  Medina-Claudio, 292 F.3d at 36.

**C.**     **Challenges to the Disciplinary Procedure**

All of Evans' claims stem from his contention that he was falsely charged with attempting to bring contraband into the prison, since K2 was not characterized as contraband at the time his mail was seized.  This argument fails as a matter of fact and as a matter of law.

As detailed above, the Disciplinary Report charged Evans with the introduction, or attempted introduction, of "any narcotic, controlled substance, illegal drug, unauthorized drug or drug paraphernalia."  Offenses 1-15, 1-19.  The lab report from the Massachusetts State Police made it clear that K2 was not a "controlled substance," and the IHO expressly acknowledged that he was proceeding on the basis that K2 was an "illegal substance for the department of corrections" even though it was not a controlled substance.  Evans' subsequent attempt to dismiss the Disciplinary Report further confirmed that his violation was not premised on K2 being a controlled substance, but, rather, on the fact that Evans had attempted to introduce an unauthorized drug into the prison.  See DF ¶ 15.  In short, there is no factual support for Evans' underlying theory that his Disciplinary Report was false, or that he was disciplined based on the false assumption that K2 was a controlled substance.

Evans also argues that his disciplinary sanction was unconstitutional because he did not know that K2 was unauthorized.  Assuming, arguendo, that his knowledge of the unauthorized status of K2 was relevant (a ruling that this court does not make), the facts relating to the lengths that Evans and Ms. Spadafora went to in order to smuggle the K2 into the prison render his protestations unbelievable.  If Evans thought the drug was authorized, it could have been delivered openly.  Here, however, the IHO reasonably accepted the reporting officer's testimony that it was "overwhelming[ly] apparent" by the nature of what was sent, the monitored phone calls, the use of code words and the like, that "Inmate Evans attempted to introduce an illegal substance into the facility by the use of the mail."[6]  Compl. Ex. B.

_____

[6] Evans argues that his due process rights were violated because he did not know about the DOC's March 27, 2012 memorandum regarding the prohibition on the introduction, attempt to introduce, or

Moreover, the record is clear that Evans' constitutional rights were not violated in connection with the prosecution of the Disciplinary Report.  In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the Supreme Court held that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest[.]"  <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 453, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356 (1985).  The parties to the instant case assume that Evans was entitled to these protections, and this court will as well.  Thus, under <u>Wolff</u> "the inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  <u>Id.</u> at 454, 105 S. Ct. at 2773 (citing <u>Wolff</u>, 418 U.S. at 563-67, 94 S. Ct. at 2978-80).  "If these procedures are followed, the prisoner's due process right is protected, regardless of the truth of the initial report."  <u>Chance v. Compton</u>, 873 F. Supp. 82, 85 (W.D. Tenn. 1994) (and cases cited).  <u>See also</u> <u>Dias v. Duval</u>, No. 94-2078, 1995 WL 378533, at *2, 59 F.3d 164 (1st Cir. June 27, 1995) (unpub. op.) (citing <u>Freeman v. Rideout</u>, 808 F.2d 949, 951-53 (2d Cir. 1986), for the proposition that a "prison inmate has no constitutionally

---

possession of synthetic marijuana, and, thus, did not receive fair notice of a rule that he was subsequently found to have violated.  <u>See</u> Pl. Mem. at 9-11.  The Massachusetts Appeals Court found that the March 27, 2012 memorandum put Evans on notice that synthetic marijuana was unauthorized or illegal to possess or attempt to possess.  <u>Evans v. Thompson</u>, 2017 WL 657649, at *2.  As noted above, the record before this court is unclear as to whether and how the memorandum was disseminated.  Even if Evans did not know about the precise memo, however, he was on notice that it was against prison regulations to attempt to introduce illegal or unauthorized drugs into the prison. There is no evidence that K2 was ever "authorized" and Evans has not established that due process requires the prison to post notices of every drug that is "unauthorized."  This is not a situation where Evans brought in a drug that he thought was permissible.  The memorandum of March 27, 2012 did not create a new rule rendering Evans' punishment for breaking the rule unconstitutional.

guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.").

As detailed above, Evans received all of the protections required by Wolff.  In addition, Evans was represented by counsel at his disciplinary hearing.  Moreover, following the conclusion of his administrative appeals, Evans took advantage of his right to judicial review of the disciplinary decision afforded by Mass. Gen. Laws ch. 249, § 4, a right of review that may even exceed due process requirements.  See Hill, 472 U.S. at 452-53, 105 S. Ct. at 2772-73 (in light of existence of Massachusetts statute providing for judicial review, Court will avoid resolving the constitutional issue "whether due process would require judicial review").

"[T]he Supreme Court has recognized that deference is due prison administrators in their attempts to secure the safety of prison staff, and to preserve discipline in the prison." Sires v. Berman, 834 F.2d 9, 14 (1st Cir. 1987) (citing Bell v. Wolfish, 441 U.S. 520, 547-48, 99 S. Ct. 1861, 1878-79, 60 L. Ed. 2d 447 (1979)).  Even without such deference, Evans has failed to establish that his constitutional rights were violated in connection with the initiation and/or prosecution of the Disciplinary Report against him.  Therefore, all the claims based on the Disciplinary Report must be dismissed.

> **D.**   **Detention in the SMU**

Evans has also asserted a number of claims relating to his confinement in the SMU beyond 90 days.  His principle argument is that his confinement violated the requirements of LaChance v. Comm'r of Corr., 463 Mass. 767, 978 N.E.2d 1199 (2012), which he interprets as limiting confinement in the SMU to 90 days.  See Pl. Mem. at 4-7.  However, Evans' argument must fail as he did, in fact, have a hearing within 90 days, as required by LaChance, and

LaChance does not prevent continued confinement in the SMU after a hearing.  While his confinement in the SMU for seven months was lengthy, it was not unconstitutional.

It is undisputed that inmates may be placed in administrative segregation "awaiting a hearing for a violation of institution rules or regulations."  103 CMR § 423.08(1)(a).  See also 103 CMR § 430.21(1) (inmates who are "under investigation for a possible disciplinary offense or [have] been charged with or found guilty of a disciplinary offense" may be placed in awaiting action status).  Similarly, an inmate who is pending transfer or classification may be placed in administrative segregation.  See 103 CMR § 423.08(1)(e) &(f).  "[T]he acceptable length of an administrative segregation is governed by a rule of reason."  LaChance, 978 N.E.2d at 1205 (and cases cited).

LaChance addressed the tension between the broad discretion granted to prison administrators and "the possibility that prison officials may use awaiting action classification as a pretext to confine indefinitely an inmate in segregated custody, with no meaningful opportunity for review of the inmate's status."  Id. at 1206.  The court ruled as follows:

> We conclude that an inmate confined to administrative segregation on awaiting action status, whether such confinement occurs in an area designated as an SMU, a DSU, or otherwise, is entitled, as a matter of due process, to notice of the basis on which he is so detained; a hearing at which he may contest the asserted rationale for his confinement; and a posthearing written notice explaining the reviewing authority's classification decision. The appropriate time frame for such actions must balance the inmate's interest – to challenge potentially arbitrary detention in severe conditions – with that of prison officials – to secure the reclassification or transfer of an inmate who poses a threat to himself, to fellow inmates, or to the security of the facility.  Although we leave it to the DOC to promulgate regulations that reflect the balance of these interests, we conclude that in no circumstances may an inmate be held in segregated confinement on awaiting action status for longer than ninety days without a hearing.

Id. at 1206-07.[7]

It is undisputed that Evans had a hearing to address his continued confinement in the SMU on March 12, 2014.  Compl Ex. E; DF ¶ 9.  Evans had been placed in the SMU on December 12, 2013.  This appears to have been within the 90 days required by LaChance.  As evidenced by the Classification Report issued after the hearing, Evans was advised of the recommendation that he remain in the SMU, as well as of his right of appeal.  Compl. Ex. E-1.  In addition, Evans received frequent notices explaining the basis for his continued confinement in the SMU, as well as another hearing on June 18, 2014.  Id.  The DOC complied with the requirements of LaChance.

Moreover, the record reflects that the DOC was acting expeditiously in connection with its investigation.  The mail was seized on December 11, 2013, submitted to the State Police crime laboratory on December 26, 2013 and the report came back on February 26, 2014.  The Disciplinary Report was issued on February 27, 2014 and a full evidentiary hearing was held on April 30, 2014.  There is evidence in the record that the hearing was continued to that date to accommodate Evans' counsel.  There is no evidence that Evans was held in awaiting action status as a pretext to confine Evans indefinitely.  Evans has failed to establish that his confine-ment in the SMU was not for a reasonable period, or otherwise constituted a violation of his constitutional rights.[8]

---

[7]  The parties have not argued that there is a similar hard and fast 90 day rule under federal law.

[8]  Since this court has not found any constitutional violations, there is no need to address the defen-dants' claims of qualified immunity or the other theories they advanced in support of the motion to dismiss.

### E.      Challenge to the Punishment Evans Received

Evans also challenges the loss of telephone privileges as being unduly harsh because his wife was dying of cancer and he could not speak to her or see her.  See Pl. Mem. at 5-6.  As an initial matter, inmates serving a life sentence for murder in the first degree are not allowed furloughs, so a visit would have been impossible.  See 103 CMR 463.07(b).  Moreover, there is no evidence that Evans filed a grievance challenging his loss of telephone privileges as being unduly harsh.  As detailed above, absent exhaustion of his administrative remedies, Evans cannot present this issue for the first time to the court.  Finally, "owing to difficulties inherent in prison management, prison administrators enjoy broad discretion in the administration of prison affairs."  LaChance, 463 Mass. at 776, 978 N.E.2d at 1206 (internal quotation omitted).  It is not the role of the court to modify disciplinary sanctions that fall within permissible limits under DOC guidelines.

### F.      Emotional Distress

In the final count of his supplemented Second Amended Complaint, Evans alleges that he suffered severe emotional distress "[a]s a direct and proximate cause and consequence of the conduct, actions and omission[s] of all defendants Michael Thompson, Dale Bissonette and Mark R. Smith alleged herein[.]"  Compl. ¶ 49.  Thus, Evans' emotional distress claim is premised on his contention that there was a false Disciplinary Report issued, as a result of which he was wrongfully kept in the SMU, and that he was kept in awaiting action status for more than 90 days without a hearing.  For all the reasons detailed above, this Count must be dismissed as his factual assumptions are defeated by the record.

In any event, Evans has failed to state a claim for the intentional infliction of emotional distress.  In order to prevail on such a claim, the plaintiff "must prove '(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress.'"  Sietins v. Joseph, 239 F. Supp. 2d 366, 379 (D. Mass. 2003) (quoting Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 596, 747 N.E.2d 729, 747 (2001) (additional citations omitted)).  In the instant case, even under the most generous reading of the Complaint, Evans has failed to allege conduct on the part of the defendants that rises to the level of "extreme and outrageous." Therefore, Evans' claim for emotional distress must be dismissed.

### IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 75) is ALLOWED.  The Second Amended Complaint as supplemented (Docket No. 85-1) is DISMISSED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge